**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 23, 2024**

# In the Court of Appeals of Georgia

A24A0995. IN RE GEORGIA DEPARTMENT OF BEHAVIORAL HEALTH AND DEVELOPMENTAL DISABILITIES.

MERCIER, Chief Judge.

Willianne Thomas was charged with one count of robbery. The trial court found her incompetent to stand trial and ordered that Thomas be committed to the Department of Behavioral Health and Developmental Disabilities ("the Department.") The Department took custody of Thomas, from the Putnam County Sheriff's Office, three months after the issuance of the order. The trial court later found the Department in contempt of its prior order because the Department failed to immediately take Thomas into custody. The Department appeals the contempt order. Because the Department's alleged violation of the trial court's order was not willful, we reverse the trial court.

"There are two kinds of contempt for violations of court orders, civil and criminal[.]" *American Med. Security Group v. Parker*, 284 Ga. 102, 104 (5) (663 SE2d 697) (2008). "The distinction between the two is that criminal contempt imposes unconditional punishment for prior acts of contumacy, whereas civil contempt imposes conditional punishment as a means of coercing future compliance with a prior court order." *Carey Canada v. Hinely*, 257 Ga. 150, 151 (356 SE2d 202) (1987).

Here, on June 14, 2023, the trial court ordered that Thomas was "hereby committed to the Department[.]" The Department took Thomas into custody on September 13, 2023. Two months later, the trial court found the Department in contempt due to its failure to immediately take Thomas into custody, and it ordered the Department to pay $5,588.56 to Putnam County for "medication and other treatment provided to [Thomas] after [the Department] was ordered to take custody of [Thomas], but [the Department] failed to do so." Because sanctions were imposed against the Department for its past conduct, the trial court held the Department in criminal contempt. See *Carey Canada*, 257 Ga. at 151 (contempt order fining party for past violations of a trial court's discovery order was an adjudication of criminal contempt); see also *Cabiness v. Lambros*, 303 Ga. App. 253, 255 (1) (692 SE2d 817)

2

(2010) ("Because sanctions were imposed against [an attorney] for his past conduct, [he] was found in criminal contempt.").

"At the outset, we note that criminal contempt is a crime in the ordinary sense. Like all crimes, contempt has an act requirement (actus reus) and a mental component (mens rea)." *In re Jefferson*, 283 Ga. 216, 218 (657 SE2d 830) (2008) (citations and punctuation omitted). "Because contempt is a crime, the evidence must, of course, support these findings beyond a reasonable doubt." Id. at 220. Accordingly, "[o]n appeal, the standard of review for a criminal contempt is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *In re Adams*, 292 Ga. 617, 617 (2) (740 SE2d 134) (2013).

So viewed, the evidence shows the following. After Thomas was charged with robbery, the trial court ordered the Department to conduct a mental health evaluation of Thomas. The Department conducted the evaluation and determined that Thomas was competent to stand trial. However, the trial court later held a competency hearing, and the parties stipulated that Thomas was incompetent to stand trial. The trial court also found that Thomas "poses a substantial danger to herself and the

community, and therefore, that she meets the criteria for inpatient or outpatient civil commitment as provided by law." On June 14, 2023, the trial court ordered that Thomas was "hereby committed to" the Department. The Department took Thomas "into custody" on September 13, 2023.

On October 31, 2023, the trial court ordered the Department, and others, to appear in order to determine why the Department had not taken Thomas into custody immediately after the trial court's June order.[1] The hearing was held on November 28, 2023, and the Commissioner of the Department testified that the Department had "every intention of honoring the order, . . . [but the Department has] 550 individuals waiting on a bed with 300 beds in the entire state."[2] The Department selects individuals for custody based on "which order [the Department] receive[s] first." However, if an individual's mental health deteriorates quickly, the Department can put the individual into a crisis bed. On average, the "wait time is approximately ten months from the time the order is received until the time a bed opens up[.]"

---

[1] It appears that the State filed a petition for contempt against the Department, but it was dismissed and does not appear in the record.

[2] While the State has 641 forensic beds, "[h]alf of those are taken up by individuals who have been sentenced to the system, not guilty by reason of insanity."

OCGA § 15-1-4 (a) (3) provides that courts have the power to "inflict summary punishment for contempt of court" for "[d]isobedience or resistance by any officer of the courts, party, juror, witness, or other person or persons to any lawful writ, process, order, rule, decree, or command of the courts[.]" However,

> [i]n order to establish criminal contempt for violation of a court order, there must be proof beyond a reasonable doubt not only that the alleged contemnor violated a court order, but also that he did so wilfully. And to show wilfulness, there must be proof beyond a reasonable doubt that the alleged contemnor had the ability to comply with the court order: It is essential to constitute a contempt that the thing ordered to be done be within the power of the person against whom the order is directed.

*In re Bowens*, 308 Ga. App. 241, 242 (1) (706 SE2d 694) (2011) (citation and punctuation omitted).

It is undisputed that the Department took Thomas into custody prior to the trial court issuing the contempt order. There was no evidence that the Department willfully failed to take custody of Thomas immediately after the trial court issued the June order. Instead, evidence was presented that the Department took custody of

Thomas as soon as the Department had bed space available.[3] As there was no evidence presented that the Department willfully failed to comply with the trial court's order, we reverse the trial court's holding of criminal contempt. See *Thomas v. Dept. of Human Resources*, 228 Ga. App. 518, 519-520 (492 SE2d 288) (1997) (reversed criminal contempt when there was no evidence that an employee had authority to reduce the number of residents in the personal care home, as directed by a prior court order); see also *In re Hadaway*, 290 Ga. App. 453, 457 (659 SE2d 863) (2008) (no evidence that adoption petitioner, or her counsel, willfully violated a court order denying her adoption petition, by filing a second petition in a different county); Compare *Affatato v. Considine*, 305 Ga. App. 755, 761 (2) (b) (700 SE2d 717) (2010) (criminal contempt upheld where contemnor failed to make timely court ordered payments and trial court found that he willfully failed to obtain a loan from his parents prior to the court-imposed deadline, when he was able to secure the loan after the deadline).

*Judgment reversed. McFadden, P. J., and Rickman, J., concur.*

---

[3] There was no evidence presented that Thomas's mental health rapidly deteriorated and that she required placement in a crisis bed.